IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **DANIEL MILES,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 3:23-cv-00259 |
| v. | ) |
| | ) |
| **DICKSON COUNTY SHERIFF'S** | ) JUDGE RICHARDSON |
| **OFFICE,** *et al.*, | ) MAGISTRATE JUDGE |
| | ) FRENSLEY |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

Daniel Miles, an inmate in the custody of the Dickson County Jail[1] in Charlotte, Tennessee, filed this pro se action under 42 U.S.C. § 1983 against the Dickson County Sheriff's Office, Southern Medical Associates, Sgt. f/n/u Siddal, Lt. f/n/u Huppe, Officer f/n/u Hodges, Josh Beckham, Head Nurse Kim l/n/u, and Nurse Crystal l/n/u, alleging violations of Plaintiff's civil and constitutional rights. (Doc. No. 1). Plaintiff also filed a Motion to Request Subpoena. (Doc. No. 2).

### I. REQUEST TO PROCEED IN FORMA PAUPERIS

By Order entered on March 30, 2023, the Court informed Plaintiff that this case could not proceed without further action on his part. (Doc. No. 4). Specifically, Plaintiff sought pauper status (*see* Doc. No. 1 at 1-2) but had not yet submitted an application for leave to proceed in forma pauperis and a certified copy of his inmate trust fund account statement. (*Id.*)

---

[1] Plaintiff does not indicate whether he is a pre-trial detainee or a convicted prisoner. Because the requirements to state colorable deliberate indifference to serious medical needs claims and excessive force claims brought under Section 1983 by convicted prisoners are more stringent than those with respect to the same claims brought by pretrial detainees, the Court assumes (to Plaintiff's benefit) that Plaintiff is a convicted prisoner for purposes of the required PLRA screening.

In response, Plaintiff has submitted three letters and a Notice to the Court (Doc. Nos. 5, 6, 7, and 8), one of which (Doc. No. 6) contains an uncertified inmate trust account statement. In Plaintiff's letters and Notice, he details his attempts to obtain a certified copy of his inmate trust statement from jail officials. (*See id.*) He provides specific information about his financial status. (*Id.*) Further, Plaintiff states that after he filed this lawsuit, jail officials have removed Plaintiff's bunk and make him sleep on the floor. (Doc. No. 5 at 1).

It appears that Plaintiff has attempted to comply with the Court's instructions and has been unable to do so for reasons outside of his control. The Court finds that, under these specific circumstances, Plaintiff has made a good faith effort to obtain pauper status with proper documentation. *See Michael Kilpatrick v. James O'Rouke*, No. 3:16-cv-01840 (M.D. Tenn. 2016) (Sharp., J.) (Doc. No. 3 at 2) (if jail officials refuse to cooperate with plaintiff's efforts to get his inmate account statement certified, plaintiff may submit a signed statement to the court detailing his attempts to comply with the court's order). Accordingly, Plaintiff's request to proceed as a pauper will be granted. Should the Court discover at any point that Plaintiff has falsely represented the amount in his inmate trust account, Plaintiff's pauper status could be revoked, and Plaintiff will be required to pay the full civil filing fee of $402.

## II. SCREENING OF THE COMPLAINT

A. PLRA SCREENING STANDARD

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a

governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

B. SECTION 1983 STANDARD

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

C. FACTS ALLEGED IN THE COMPLAINT

The following facts are alleged in the complaint and are assumed to be accurate for present purposes.

Plaintiff suffered a stroke in 2018 that left him partially paralyzed on his right side. (Doc. No. 1 at 2). Plaintiff's paralysis makes it difficult for him to walk.

On January 12, 2023, Plaintiff was confined at the Dickson County Jail. Officer Chilton went to Plaintiff's cell to take Plaintiff to a "medical callout." (*Id*.) Plaintiff requested a wheelchair because his leg was hurting, and it was a long walk to the medical unit. An unspecified individual in "medical" told Officer Chilton that Plaintiff did not need a wheelchair and instead "needed the exercise." (*Id*. at 3). Plaintiff then attempted to walk, unassisted, to the medical unit. After walking approximately fifty feet, Plaintiff stopped to take a break in the hallway. As he attempted to sit for the break, he slipped and fell.

Head Nurse Kim l/n/u ("Head Nurse Kim") appeared in the hallway and yelled at Plaintiff, telling him "to get up and start walking, telling [him] that the reason [his] leg does not work is because [he doesn't] use it enough." (*Id*.) Plaintiff told Head Nurse Kim that the reason his leg does not work is because it is paralyzed and he does not have his ankle-foot orthotic ("AFO"), something that Head Nurse Kim knows because she will not allow him to have it.

During Plaintiff's discussion with Head Nurse Kim, Sergeant Siddal arrived. With his taser drawn, he told Plaintiff to "get up and get walking" or be tased. (*Id*. at 4). Plaintiff complied. Sergeant Siddal kept the taser pointed at Plaintiff while he walked and demanded that Plaintiff walk faster. When they almost had arrived at the medical unit, Sergeant Siddal grabbed Plaintiff's right arm, forced the taser against his chest, and said, "If you don't walk faster, I will ta[se] you!" (*Id*.) Plaintiff then "went into a convultion [sic]," lost his footing, and fell. (*Id*. at 4-5). Sergeant Siddal dragged Plaintiff down the hallway past the medical unit. Lieutenant f/n/u Huppe assisted Sergeant Siddal in dragging Plaintiff toward booking. Plaintiff "begged" them to stop and let him walk. (*Id*. at 5). They allowed Plaintiff to walk about ten to fifteen feet, but Sergeant Siddal "got upset" that Plaintiff was not walking fast enough and asked Officer Beckham to assist in dragging Plaintiff to a cell. (*Id*.) Officer Beckham said that he did not need any help and proceeded to drag Plaintiff first to a full cell in booking and then to an empty cell.

Plaintiff's right shoulder was injured during this incident. He is in "constant pain." (*Id.* at 6). He has requested to see a doctor, but an unspecified individual denied Plaintiff any medical treatment.

On the same day during the second shift, Plaintiff asked to use an accessible bathroom because the one in the booking cell (in which Officer Beckham had placed Plaintiff earlier that day) was not accessible. Officer f/n/u Hodges denied Plaintiff's request and, in doing so, "rub[bed] [Officer Hodges's] eyes like [he] was crying." (*Id.* at 7). Plaintiff asked to see Officer Hodges's supervisor, but Officer Hodges said that his supervisor was absent. Plaintiff began yelling for Officer Hardgrove, who Plaintiff knew to be Officer Hodges's supervisor, and Officer Hodges "did the crying thing again." (*Id.*) Plaintiff responded that he hoped Officer Hodges and his family died. Upon hearing this statement, Officer Hodges entered Plaintiff's cell, grabbed Plaintiff by the throat, pressed a taser into Plaintiff's neck, and threatened Plaintiff's life. Plaintiff repeated the same statement, and Officer Hodges "repeated the same attack" again. (*Id.* at 8). Plaintiff was not permitted to use an accessible restroom for the next two shifts.

On January 14, 2023, Plaintiff was taken to the medical unit in a wheelchair. Plaintiff asked Nurse Kim if Plaintiff could see a doctor regarding Plaintiff's right shoulder, and she denied his request.

Later, Plaintiff requested an extra mattress, which was approved. Plaintiff then asked Nurse Crystal l/n/u ("Nurse Crystal") if he could see a doctor about his right shoulder, to which she responded: "I already approved you for the mattress, but if that is not good enough I can put you in booking." (*Id.* at 9).

As relief, Plaintiff seeks "damages for injuries and pain and suffering." (*Id.* at 10). He also asks to be examined and treated by a doctor.

D. <u>ANALYSIS</u>

The complaint names as Defendants the Dickson County Sheriff's Office, Southern Medical Associates, Sgt. Siddal, Lt. Huppe, Officer Hodges, Josh Beckham, Head Nurse Kim, and Nurse Crystal.

1. *Preliminary Matters*

First, the complaint names the Dickson County Sheriff's Office as a Defendant to this action. However, a police or sheriff's department is not a "person" who can be sued under 42 U.S.C. § 1983. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *see also Mathes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10-cv-0496, 2010 WL 3341889, at *2-3 (M.D. Tenn. Aug. 25, 2010) (noting that "since *Matthews*, federal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit" under Tennessee law, and therefore granting the motion to dismiss the Section 1983 claim against the Davidson County Sheriff's Office). Consequently, Plaintiff's Section 1983 claims against the Dickson County Sheriff's Office must be dismissed for failure to state a claim upon which relief may be granted. These claims will be dismissed.

Next, before addressing the substance of Plaintiff's remaining claims, the Court must address a procedural issue. Plaintiff has failed to identify in what capacity he has sued Defendants. Specifically, the complaint does not indicate whether the individuals named as Defendants are being sued in their official capacities, individual capacities, or both.[2]

"A suit brought against a public, government official will not be construed as seeking damages against the defendant in his or her individual capacity unless such a claim for individual liability is clearly and definitely set forth in the pleading." *Burgans v. Hammond*, No. 1:10-cv-334, 2011 WL

---

[2] Plaintiff did not submit his complaint using a form complaint provided by this Court or another court. Plaintiff's complaint is entirely handwritten. Thus, Plaintiff was not prompted by form language to check the box for individual capacity, official capacity, or both.

3325880, at *5 (E.D. Tenn. Aug. 2, 2011) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1038 (6th Cir.), *cert. denied*, 515 U.S. 1116 (1995)). Although it is preferable that plaintiffs explicitly state whether a defendant is sued in his or her individual capacity, the failure to do so is not fatal if the complaint or other filed documents provide sufficient notice to the defendant that he is being sued as an individual. *See, e.g.*, *Moore v. City of Harriman*, 272 F.3d 769, 774 (6th Cir. 2001); *see Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("[A] plaintiff's failure to explicitly state 'individual capacity' in the complaint is not necessarily fatal to" individual-capacity claims."). The Sixth Circuit "employ[s] a 'course of proceedings' test to ascertain whether a Section 1983 defendant was on notice that the plaintiff intended to hold him or her personally liable, notwithstanding the plaintiff's failure to provide explicit notice." *Id.* (citing *Shepherd v. Wellman*, 313 F.3d 963, 967 (6th Cir. 2002)). In doing so, the court analyzes "'factors [such] as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint.'" *Goodwin v. Summit Cnty.*, 703 F. App'x 379, 382 (6th Cir. 2017) (quoting *Moore v. City of Harriman*, 272 F.3d 769, 772 n.1 (6th Cir. 2001)).

Here, the complaint provides sufficient notice to Defendants of their potential individual liability. Plaintiff's claims are based on particular conduct by specific individuals named in the complaint, such an alleged acts of excessive force. Plaintiff also requests "damages for injuries and pain and suffering." (Doc. No. 1 at 10). And "[t]o the extent doubt persists that this combination of factors warrants construing the complaint as one against the defendants individually," the Sixth Circuit has counseled that "this doubt should be resolved in" favor of the pro se plaintiff. *See Lindsay v. Bogle*, 92 F. App'x 165, 169 (6th Cir. 2004) (citing *Boswell v. Mayer*, 169 F.3d 384 387 (6th Cir. 1999)). Accordingly, the Court will consider this action as being brought against Defendants in their individual and official capacities.

When a defendant is sued in his or her official capacity as an employee of the government, the lawsuit is directed against "the entity for which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). Here, Defendants Siddal, Huppe, Hodges, and Beckham are employees of Dickson County, Tennessee. A claim of governmental liability requires a showing that the alleged misconduct is the result of a policy, statement, regulation, decision or custom promulgated by Dickson County or its agent. *Monell Dep't of Social Svcs.,* 436 U.S. 658, 690-691 (1978). In short, for Dickson County to be liable to Plaintiff under Section 1983, there must be a direct causal link between an official policy or custom and the alleged violation of Plaintiff's constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978)); *Regets v. City of Plymouth*, 568 F. App'x 380, 2014 WL 2596562, at *12 (6th Cir. 2014) (quoting *Slusher v. Carson*, 540 F.3d 449, 456-57 (6th Cir. 2008)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. *Burgess*, 735 F.3d at 478.

Here, the allegations of the complaint are insufficient to state a claim for municipal liability against Dickson County under Section 1983. The complaint: does not identify or describe: any of Dickson County's policies, procedures, practices, or customs relating to the incidents at issue; or any particular shortcomings in training or supervision or how those shortcomings caused the alleged violations of Plaintiff's rights; or any other previous instances of similar violations that would have put Dickson County on notice of a problem. *See Okolo v. Metro. Gov't of Nashville*, 892 F. Supp.2d 931, 944 (M.D. Tenn. 2012); *Hutchison v. Metro. Gov't of Nashville*, 685 F. Supp.2d 747, 751 (M.D.

Tenn. 2010); *Johnson v. Metro. Gov't of Nashville*, No. 3:10-cv-0589, 2010 WL 3619790, at *2-3 (M.D. Tenn. Sept. 13, 2010). Accordingly, the Court finds that the complaint does not contain sufficient allegations to state a claim for municipal liability against Dickson County. Plaintiff's claims against Defendants Siddal, Huppe, Hodges, and Beckham in their official capacities (which, as noted, are effectively claims against Dickson County) therefore must be dismissed.

Finally, although the complaint names Lieutenant Huppe as a Defendant to this action, Plaintiff does not make any factual allegations Huppe. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Thus, where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff's allegations fall far short of the minimal pleading

standards under Rule 8 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Any claims against Lieutenant Huppe in his individual capacity, therefore, must be dismissed.

   2. *Eighth Amendment Deliberate Indifference to Serious Medical Needs Claims*

The complaint alleges that Defendants Nurse Kim, Nurse Crystal, and an unidentified individual were deliberately indifference to Plaintiff's serious medical needs.

The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment protects inmates serving sentences of imprisonment after conviction, as Plaintiff is. *See Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) ("The Eighth Amendment provides an inmate the right to be free from cruel and unusual punishment."). In the case of state actors like Defendants, the Eighth Amendment protections are applicable (when they are applicable) specifically by way of the Fourteenth Amendment. *See Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021). In these situations, courts generally speak in terms of "Eighth Amendment" protection without any reference (beyond an initial reference) to the Fourteenth Amendment. Eighth Amendment protection is applicable in the instant case because, as noted in footnote 1 above, the Court assumes herein (to Plaintiff's advantage) that Defendant is a convicted prisoner

By contrast, the Due Process Clause of the Fourteenth Amendment provides the same kind (though not always identical) protection to pretrial detainees. *Richmond*, 885 F.3d at 937 ("The Due Process Clause of the Fourteenth Amendment provides the same protections to pretrial detainees."). Such protection is generally referred to by courts as "Fourteenth Amendment" protection without any reference (beyond an initial reference) to the Due Process Clause. Fourteenth Amendment protection is inapplicable here.

A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "'sufficiently serious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)). A plaintiff satisfies the subjective component "'by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Rouster*, 749 F.3d at 446 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Under these standards, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. To state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. In addition, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 107. In sum, generally speaking, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a

prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock*, 273 F.3d 693, 703.

Here, for purposes of the required PLRA screening, the Court finds that the medical problems Plaintiff describes (pain; paralysis on the right side, resulting in difficulty walking) constitutes a sufficiently serious medical need. *See Williamson v. Wheeler*, No. 1:22-cv-1371, 2022 WL 16923967, at *3 (N.D. Ohio Nov. 14, 2022) (assuming for purposes of the PLRA review that "Plaintiff's own assertion that he needs a rollator to walk long distances and stand in long line in the institution without experiencing pain is sufficient to demonstrate that he has a sufficiently serious medical need"); *Stanton v. Correct Care Solutions*, No. 3:18-cv-00378, 2018 WL 3473969, at *5 (M.D. Tenn. July 17, 2018) (finding that prisoner-plaintiff presented a sufficiently serious medical need "by alleging an infected, ulcerated lesion on his foot which, in combination with his diabetes, limited his ability to walk"); *Scott v. Antonini*, No. 07-10459, 2011 WL 533869, at *2 (E.D. Mich. Feb. 15, 2011) ("It is well established that pain can be a sufficiently serious medical need for purposes of an indifference claim."); *see also Wood v. Plummer*, 940 F. Supp.2d 636, 642 (S.D. Ohio 2013) (in considering defendant's summary motion, assuming arguendo that plaintiff's "pain/arthritis in his hip and back," which make it hard for him to walk, amounts to a serious medical need).

With regard to the subjective component of Plaintiff's claims, which is a defendant-specific matter, the Court will start with Nurse Kim in her individual capacity. Prison personnel may be deliberately indifferent to a prisoner's serious medical by "interfer[ing] with treatment once prescribed." *Estelle*, 429 U.S. at 104-05; *see also Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (a prisoner has a cause of action for deliberate indifference if he "suffers pain needlessly when relief is readily available."). Here, the complaint alleges that Nurse Kim removed Plaintiff's access to his ankle-foot orthotic device, thereby limiting Plaintiff's ability to walk without pain. Further, the

complaint alleges that Nurse Kim denied Plaintiff the use of a wheelchair, thereby requiring him to walk a long distance to receive medical care, and denied him any medical treatment for right shoulder pain after Plaintiff's second shift incident on January 12, 2023. These allegations could give rise to an inference of deliberate indifference on the part of Nurse Kim for purposes of the required PLRA screening. Consequently, the Court finds that the complaint sets forth a non-frivolous Eighth Amendment claim under Section 1983 against Nurse Kim in her individual capacity based on the denial of medical treatment for Plaintiff's serious medical need, Nurse Kim's withholding of a medical device, and her refusal to permit Plaintiff to use a wheelchair for transport to the medical unit. This claim will proceed for further development.

Likewise, Plaintiff's Eighth Amendment claim against Nurse Crystal in her individual capacity will proceed. The complaint alleges that Nurse Crystal denied Plaintiff access to medical care for his shoulder injury and threatened to retaliate against Plaintiff if he sought medical care after her denial. On initial review, these allegations could give rise to an inference of deliberate indifference on the part of Nurse Crystal.

Next, the Court will consider Defendant Southern Medical Associates ("SMA"), which the Court infers from the complaint is the entity responsible for providing medical care to inmates at the Dickson County Jail. Because SMA performs a traditional state function in providing medical care to inmates, SMA acts under the color of state law. *Street v. Corr. Corp. of Am*., 102 F.3d 810, 814 (6th Cir. 1996). Plaintiff cannot rely on the theory of respondeat superior or vicarious liability. *Id.* at 818. Instead, for SMA to be liable under Section 1983, Plaintiff must allege that there is a direct causal link between a policy or custom of SMA and the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978). In other words, SMA may be liable under Section 1983 "if its official policies or customs resulted in injury to the plaintiff." *O'Brien v. Mich. Dep't of Corr*., 592 Fed. Appx. 338, 341 (6th Cir. 2014); *see also Mason v. Doe*, No. 3:12CV-P794-H, 2013 WL

4500107, at *1 (W.D. Ky. Aug. 21, 2013) (collecting cases) ("a private corporation may be liable under § 1983 when an official policy or custom of the corporation causes the alleged deprivation of a federal right").

Liability attaches only if SMA's policies are shown to be the "moving force" behind Plaintiff's injuries. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 353-64 (6th Cir. 1993).

Here, Plaintiff has not alleged any facts from which the Court could conclude that an official policy or custom of SMA resulted in a violation of Plaintiff's constitutional rights. Other than being named as a Defendant to this action on page one of the complaint, SMA is not mentioned again. Where a person or entity is named as a defendant without an allegation of specific conduct, that defendant is subject to dismissal, even under the liberal construction afforded to pro se complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir.2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights). Thus, the Court finds that SMA is subject to dismissal because the complaint fails to state a deliberate indifference to serious medical needs claim upon which relief can be granted under Section 1983 against SMA.

Finally, in his complaint, Plaintiff alleges that an unspecified individual "in medical" told Officer Chilton that Plaintiff did not need a wheelchair and, instead, "needed the exercise." (Doc. No. 1 at 3). Plaintiff provides no additional information regarding this individual or his or her state of mind. As such, the complaint fails to allege that this individual acted with deliberate indifference to Plaintiff's serious medical needs. The claim will not proceed for further development.

### 3. *Conditions of Confinement Claims*

The complaint alleges names Officer Hodges in his individual capacity as a Defendant to the Plaintiff's Eighth Amendment conditions-of-confinement claim. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (collecting cases); *Grubbs v. Bradley*, 552 F. Supp. 1052, 1119-1124 (M.D. Tenn. 1982). The failure to provide such necessities is a violation of an inmate's right to be free from cruel and unusual punishment. *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984).

Here, the Plaintiff's claim is premised on Defendant Hodges's failure to move Plaintiff to a cell with an accessible bathroom. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). As noted *supra*, an Eighth Amendment claim has two components, one objective, one subjective. First, the alleged deprivation must be, objectively, "sufficiently serious," *i.e.*, the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted). Second, the official must have been "deliberately indifferent" to the inmate's health or safety. *Id*.

The Constitution does not mandate comfortable prisons, but it does not tolerate inhumane ones. *Farmer*, 511 U.S. at 832. At its core, "[t]he [Eighth] Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle*, 429 U.S. at 102 (internal quotation marks and citation omitted). Thus, the Constitution protects against punishments incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Id*. (internal quotation marks and citation omitted). "As a society, we have grown increasingly sensitive to the need to accommodate individuals with disabilities," and courts have repeatedly found that the failure to provide accessible facilities to inmates may violate the Constitution. *Stoudemire v.*

*Michigan Dept. of Corr.*, 614 F. App'x 798, 803 (6th Cir. 2015) (quoting *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998)). *See, e.g., Kiman v. N.H. Dep't of Corrs.*, 451 F.3d 274, 287-88 (1st Cir. 2006) (holding that prisoner-plaintiff, who suffered from ALS, presented evidence that corrections officers prevented him from using a shower chair or accessible shower facilities despite repeated requests); *Frost*, 152 F.3d at 1129 (finding triable issue of fact regarding failure to provide adequate shower facilities to an inmate who wore a leg cast and used crutches); *LaFaut v. Smith*, 834 F.2d 389, 394 (4th Cir. 1987) (Powell, J., sitting by designation) (holding that paraplegic prisoner who alleged that prison officials had denied him adequate toilet facilities and necessary physical therapy despite the inmate's repeated requests stated an Eighth Amendment claim); *Muhammad v. Dep't of Corrs.*, 645 F.Supp.2d 299, 314-18 (D. N.J. 2008) (holding that amputee prisoner stated an Eighth Amendment claim where he alleged he was assigned to an upper bunk in a cell located from a handicap accessible shower), *aff'd*, 396 F. App'x 789 (3d Cir. 2010); *Schmidt v. Odell*, 64 F.Supp.2d 1014, 1029-33 (D. Kan. 1999) (holding that double amputee forced to crawl around the floor of the jail stated an Eighth Amendment claim). The safety risks associated with confining a handicapped inmate in a cell not equipped for his needs has a level of "obviousness" sufficient to satisfy the objective and subjective elements of a claim for deliberate indifference. *Stoudemire*, 614 F. App'x at 803-04.

Here, the complaint alleges that Officer Hodges was aware of Plaintiff's alleged need for accessible housing but nevertheless refused to take any action to ensure that Plaintiff was housed in an accessible cell; in fact, when Hodges denied Plaintiff's request to use an accessible bathroom, Officer Hodges "rub[bed] his eyes like [he] was crying." (Doc. No. 1 at 7). The complaint further alleges that Officer Hodges repeated the crying gesture when Plaintiff asked to see a supervisor and ensured that Plaintiff did not have access to an accessible bathroom for the next two shifts. For purposes of the required screening, these allegations support a claim of deliberate indifference.

Therefore, the Court finds that the complaint states an actionable Eighth Amendment conditions-of-confinement claim against Defendant Hodges in his individual capacity based on his role in Plaintiff's placement in a non-accessible cell.

4. *Excessive Force Claims*

Plaintiff's final claim is one of excessive force by Defendants Siddal, Huppe, Beckham, and Hodges. As noted above, for purposes of the PLRA screening, the Court assumes that Plaintiff is a convicted prisoner. The legal status of an alleged victim (*i.e.*, convicted prisoner versus pretrial detainee) of excessive force is significant because the conduct of the offending officer must be analyzed under the standard appropriate to the applicable constitutional provision. *See Coley v. Lucas Cnty., Ohio,* 799 F.3d 530, 538-39 (6th Cir. 2015) ("The Supreme Court has recently clarified . . . that when assessing pretrial detainees excessive force claims we must inquire into whether the plaintiff shows 'that the force purposefully or knowingly used against him was objectively unreasonable.'") (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

Under the Eighth Amendment, which applies to convicted prisoners such as Plaintiff, an officer's conduct amounts to cruel and unusual punishment "when the[] 'offending conduct reflects an unnecessary and wanton infliction of pain.'" *Cordell v. McKinney,* 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin,* 631 F.3d 380, 383 (6th Cir. 2011)). With respect to an excessive force claim under the Eighth Amendment, the constitutional analysis has both a subjective and an objective component, requiring a court to determine "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," and whether "the pain inflicted was sufficiently serious." *Cordell*, 759 F.3d at 580 (internal quotation marks and citations omitted) (alteration added). The heightened Eighth Amendment standard acknowledges that "'[t]he maintenance of prison security and discipline may require that inmates be subjected to physical

contact actionable as assault under common law.'" *Id.* (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)) (alteration in original).

In determining whether the force used was applied in a good-faith effort to restore discipline or rather was inflicted for a malicious purpose, it is "proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell*, 759 F.3d at 581 (citing *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). "'When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident.'" *Cordell*, 759 F.3d at 581 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (alteration in original). A significant physical injury is not required to establish the objective component of an Eighth Amendment claim. *Wilkins*, 559 U.S. at 1178-79 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). In the end, a determination of what constitutes "unnecessary and unwanton infliction of pain," is "contextual and responsive to contemporary standards of decency." *Hudson*, 503 U.S. at 8.

Here, the complaint alleges that Sergeant Siddal forced Plaintiff, who allegedly is partially paralyzed and has trouble walking, to walk at a rapid pace while threatening to tase Plaintiff. In addition, the complaint alleges that Sergeant Siddal grabbed Plaintiff's right arm, forced a taser against his chest, and dragged him down the hallway. The complaint next alleges that Officer Beckham dragged Plaintiff down a hallway from one cell to another, resulting in injuries to Plaintiff's shoulder. The complaint further alleges that Officer Hodges grabbed Plaintiff by the throat, pressed a

taser into his neck, and threatened Plaintiff's life. For purposes of the PLRA screening, the Court finds that these allegations state colorable Eighth Amendment excessive force claims under Section 1983 against Defendants Siddal, Beckham, and Hodges in their individual capacities. These allegations warrant further factual development.

### III. CONCLUSION

Plaintiff's request to proceed as a pauper will be granted.

Having screened the complaint pursuant to the PRLA, the Court finds that Plaintiff's allegations state colorable Eighth Amendment deliberate indifference to serious medical needs claims under Section 1983 against Nurse Kim and Nurse Crystal in their individual capacities; a colorable Eighth Amendment conditions-of-confinement claim against Defendant Hodges in his individual capacity based on his role in Plaintiff's placement in a non-accessible cell; and colorable Eighth Amendment excessive force claims under Section 1983 against Defendants Siddal, Huppe, Beckham, and Hodges in their individual capacities. These claims shall proceed.

Plaintiff's official capacity claims as well as Plaintiff's deliberate indifference to serious medical needs claims against SMA and an unidentified individual fail to state colorable claims under Section 1983. Likewise, Plaintiff's claims against Lieutenant Huppe in his individual capacity fail to state colorable claims under Section 1983. Those claims and Defendants will be dismissed.

Plaintiff's Motion to Request Subpoena (Doc. No. 2) will be addressed by the Magistrate Judge upon referral.

An appropriate Order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE